## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHARRON FEDDER,

        Plaintiff,

   v.

BLOOMSBURG UNIVERSITY OF
PENNSYLVANIA and
PENNSYLVANIA STATE SYSTEM
OF HIGHER EDUCATION,

        Defendants.

No. 4:23-CV-01678

(Chief Judge Brann)

## MEMORANDUM OPINION

### FEBRUARY 13, 2024

When faced with allegations concerning improper behavior in the workplace, courts must tread carefully. Title VII of the Civil Rights Act of 1964 and its state law equivalents are not meant to transform judges into enforcers of "a general civility code"[1] for the nation. As such, Sharron Fedder must do more than expose "ordinary tribulations of the workplace" to avoid dismissal.

## I.    BACKGROUND

On December 22, 2023, Plaintiff, Sharron Fedder, filed a two-count Second Amended Complaint against the Defendants, Bloomsburg University of Pennsylvania and the Pennsylvania State System of Higher Education, alleging

---

[1] *See e.g.*, *Scruggs v. Phila. Hous. Auth.*, Civ. A. No. 22-510, 2024 U.S. Dist. LEXIS 17565, at *27 (E.D. Pa. Jan. 31, 2024) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

claims under Title VII and the Pennsylvania Human Rights Act ("PHRA").[2] The Defendants then filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on January 5, 2024.[3] The motion is now ripe for disposition; for the reasons that follow, it is denied.

## II.   DISCUSSION

### A.   Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[4] and *Ashcroft v. Iqbal*,[5] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual

---

[2]   *See* Doc. 11 (Second Amended Compl.).
[3]   *See* Doc. 13 (Motion to Dismiss Second Amended Compl.).
[4]   550 U.S. 544 (2007).
[5]   556 U.S. 662 (2009).
[6]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[7]

## B.    Facts Alleged in the Second Amended Complaint

The facts alleged in the Second Amended Complaint, which this Court must accept as true for purposes of this motion, are as follows.

Sharron Fedder began working for the Defendants in 1996; after changing positions several times, she joined the Defendants' mailroom.[8] In 2021, her supervisor, Brian Sweetra, started to make "sexist comments."[9] Plaintiff eventually reported Sweetra to Human Resources and the Defendants' Chief of Staff.[10] Human Resources instructed Fedder to "ask Mr. Sweetra himself for leave[,]" and the Chief of Staff concluded that no violations of the Defendants' anti-discrimination or anti-harassment policies had occurred.[11]

This "failure to hold" Sweetra "accountable empowered him to act more drastically."[12] He "repeatedly invaded Plaintiff's personal space[,]" "closely followed [her] on Defendants' campus[,]" "came within an inch from her face and stated in a sexual manner, 'You're about the size of my wife[,]'" and glared at

---

[7]    *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
[8]    *See* Doc. 11 (Second Amended Compl.) ¶ 11.
[9]    *Id.* ¶ 15. These comments included remarking "what's next? A pink Barbie car?" and asserting that women are not physically suited to work in the mailroom. *See id.* ¶¶ 17, 19.
[10]    *See id.* ¶¶ 22-24.
[11]    *Id.*
[12]    *Id.* ¶ 25.

Fedder in "a threatening manner and placed both of his hands on his genitals" after she had bent over.[13]

Following this escalation, Plaintiff filed a second complaint with Human Resources and also reported Sweetra to a Title IX Coordinator.[14] Again, no corrective actions were taken by the Defendants.[15] Assistant Director Christa Barilla instead "encouraged Plaintiff to 'improve [her] communication with'" Sweetra.[16]

Consequently, Sweetra "continued to engage in sexist commentary and sexually intimidating behavior in the workplace."[17] "In fact, he boasted to his coworkers…that as a result of the investigation, he 'got [his] hand slapped and it was painless.'"[18] Sweetra began mocking Fedder by "frequently re-enacting and repeating" her complaints and "continuously" making sexist comments about women in the mailroom.[19] "In an obvious attempt to intimidate Plaintiff, [Sweetra] asked her 'How much can a [personal investigator] find out about somebody?'"[20] After her formal complaints, Sweetra would also often ask Fedder "How would

---

[13] *Id.* ¶¶ 26, 29-31.

[14] *See id.* ¶¶ 33-34.

[15] *See id.* ¶ 35.

[16] *Id.* ¶ 36.

[17] *Id.* ¶ 40.

[18] *Id.* ¶ 41.

[19] *Id.* ¶¶ 42-43. These comments were: "women can't lift"; "girls can't do [mail] runs"; and "women aren't fit to work in the mailroom." *Id.*

[20] *Id.* ¶ 46.

you like to do all the mail by yourself?" and then "proceed to shuffle all the mail" to make her job more difficult.[21]

At some point, Plaintiff received "a reprimand for her 'communication'" after she "tried to air her grievances regarding" Sweetra.[22] "Notably, this was the first time Plaintiff had" been subject to workplace discipline in twenty-six years.[23] Sweetra also began to "intentionally ignore" Fedder and "only communicat[ed] with Defendants['] male employees."[24] He did not treat any male employees this way; Fedder's male coworkers were treated "more favorably."[25] The Defendants' Union President told Plaintiff that "she would be 'fired' if the situation with" Sweetra "'wasn't worked out.'"[26] "Due to [the] Defendants' failure to take any corrective action, Plaintiff's employment was constructively discharged on July 30, 2022."[27]

## C.    Analysis

"Pennsylvania courts look to federal court decisions interpreting Title VII" when evaluating PHRA claims.[28] As such, the Court will analyze Plaintiff's PHRA and Title VII claims together.

---

[21]   *Id.* ¶¶ 50-51.
[22]   *Id.* ¶ 48.
[23]   *Id.* ¶ 49.
[24]   *Id.* ¶ 52.
[25]   *Id.* ¶¶ 57-58.
[26]   *Id.* ¶ 56.
[27]   *Id.* ¶ 59.
[28]   *Phila. Hous. Auth. v. Am. Federation of State, Cnty. And Mun. Emp.*, 956 A.2d 477, 484 n.12 (Pa Cmwlth. Ct. 2008) (citing *Hoy v. Angelone*, 691 A.2d 476 (1997)).

1.      **Hostile Work Environment**[29]

"The Third Circuit has promulgated a five-factor test for a successful claim of hostile work environment sexual harassment: '(1) the employee[] suffered intentional discrimination because of [her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability.'"[30] Courts "consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"[31]

"For discrimination to constitute severe or pervasive behavior, it must 'alter the conditions of [the victim's] employment.'"[32] The Supreme Court of the United States has "emphasized that 'conduct must be extreme' to satisfy this standard, so

---

[29]   The Court acknowledges that the Defendants first argue that Sweetra's behavior is not actionable under Title VII and the PHRA due to a lack of severity or pervasiveness. The Defendants cite *Faragher v. City of Boca Raton* to support this. Given the context of that discussion in *Faragher*, the Court will consider these arguments in the hostile work environment analysis.

[30]   *Pittman v. Continental Airlines, Inc.*, 35 F. Supp. 2d 434, 441 (E.D. Pa. 1999) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1482 (3d Cir. 1990)).

[31]   *Nitkin v. Main Line Health*, 67 F. 4th 565, 570 (3d Cir. 2023) (quoting *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 168 (3d Cir. 2013)).

[32]   *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

'simple teasing, offhand comments, and isolated incidents (unless extremely serious)' are inadequate."[33]

Presently, the only contested factor "is whether the conduct Plaintiff described was severe or pervasive enough to make out [a] hostile work environment claim."[34] "Although the bar for establishing 'severe or pervasive' discrimination is relatively high, 'the determination of what constitutes severe or pervasive does not lend itself to a mathematically precise test.'"[35] "Courts in this Circuit have…'shown a reluctance to dismiss a complaint at the 12(b)(6) stage when the primary challenge to the hostile work environment claim is whether or not the conduct in question is severe [or] pervasive.'"[36] "'[T]he question of whether the allegations contained in [the Second Amended Complaint] are ultimately sufficient to prove that the discrimination was 'severe or pervasive' is [therefore a] question properly reserved for summary judgment and trial'" in this instance.[37]

---

[33]  *Id.* (quoting *Faragher*, 524 U.S. at 788).

[34]  *Grasty v. World Flavors, Inc.*, Civ. A. No. 11-1778, 2011 U.S. Dist. LEXIS 89277, at *19-20 (E.D. Pa. Aug. 11, 2011). The Court finds that Plaintiff has properly alleged the remaining factors.

[35]  *Robinson v. Amtrak*, 880 F. Supp. 2d 575, 582 (E.D. Pa. 2012) (quoting *Long v. Pizza Hut (Store # 635008)*, No. 03-0738, 2003 U.S. Dist. LEXIS 23194, at *4 (W.D. Pa. Nov. 5, 2003)).

[36]  *Id. See also Bryant v. Wilkes-Barre Hosp., Co., LLC*, Civ. A. No. 3:14-CV-1062, 2015 U.S. Dist. LEXIS 15540, at *19 (M.D. Pa. Feb. 10, 2015) (Mannion, J) (citing *Robinson*, 880 F. Supp. 2d at 582); *Davis-Collins v. City of Wilmington*, Civ. A. No. 20-758-RGA, 2022 U.S. Dist. LEXIS 73704, at *3-4 (D. Del. Apr. 22, 2022) (collecting cases).

[37]  *Bryant*, 2015 U.S. Dist. LEXIS 15540, at *19. Plaintiff's Second Amended Complaint includes allegations related to physical harassment and harassment of a sexual nature. *See* Doc. 11 (Second Amended Compl) ¶¶ 26-32. These averments help Fedder plead an

### 2. Retaliation

For her retaliation claim, Fedder must establish that she "'(1) [engaged in a] protected employee activity; (2) adverse action [was taken] by the employer either after or contemporaneous with [her] protected activity; and (3) a causal connection between [her] protected activity and the employer's adverse action.'"[38]

### a. Protected Activity

Protected activity includes both formal and informal complaints of discrimination.[39] This prong has clearly been established; Fedder's two, good-faith complaints are exactly the kind of activity protected under Title VII.[40]

### b. Adverse Employment Action

For the second prong, Fedder "'must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"[41]

---

adequate cause of action when combined with Sweetra's sexist remarks, which alone, would have been insufficient.

[38] *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

[39] *See id.* (quoting *Curray-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)).

[40] *See* Doc. 11 (Second Amended Compl.) ¶¶ 22-24, 33-34.

[41] *Id.* at 195 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

### i.      Written Reprimand

Since it is unclear whether the written reprimand was "permanently affixed to [Plaintiff's] employment record[,]"[42] the Court does not currently consider it to be an adverse action.

### ii.      Constructive Discharge

"A constructive discharge constitutes an 'adverse employment action' for purposes of Title VII."[43] "To determine if there has been a constructive discharge, courts analyze whether 'the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'"[44] "[W]hen a plaintiff alleges that a defendant failed to act immediately following her complaints, and thereby permitted hostility within the workplace to continue or escalate, a retaliatory constructive discharge claim may be established."[45] As alleged, that is exactly what occurred.[46]

Both parties address factors identified by the Third Circuit in *Cowell v. Rite Aid Corp.*[47] But the Third Circuit "applied these factors when adjudicating the

---

42    *Burton v. Pa. State Police*, 990 F. Supp. 2d 478, 502 (M.D. Pa. Jan. 2, 2014) (Rambo, J.) (citing *Weston v. Pennsylvania*, 251 F.3d 420, 430-31 (3d Cir. 2001)).

43    *Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 556 (E.D. Pa. 2017) (citing *Price v. Del. Dep't of Corr.*, 40 F. Supp. 2d 544, 552-53 (D. Del. 1999)).

44    *Id.* (quoting *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996)).

45    *King v. Pa. Dep't of Corr.*, Civ. A. No. 18-1245, 2020 U.S. Dist. LEXIS 79757, at *27 (W.D. Pa. May 5, 2020) (citing *Ellingsworth*, 247 F. Supp. 3d at 557).

46    *See* Doc. 11 (Second Amended Compl.) ¶¶ 25-32, 40-44, 48-55.

47    *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 503 (3d Cir. 2010). These factors include: threatening the employee with discharge or urging them to retire or resign; demoting them; reducing their pay or benefits; involuntarily transferring the employee to a less desirable

defendants' motions for summary judgment."[48] They "are, therefore, not appropriate for determining whether Plaintiff has stated a claim for constructive discharge at the pleading stage."[49] "Thus, the chief inquiry is whether Plaintiff has alleged sufficient facts to plausibly allege constructive discharge."[50] Since "[c]laims of constructive discharge are highly fact-specific[,]" it "is often 'inappropriate'" to decide "'that fact-intensive question in the context of a 12(b)(6) motion.'"[51]

"To be sure," Fedder "meets the low pleading bar at this stage" even when analyzing the *Cowell* factors.[52] Plaintiff faced escalating harassment[53] after she reported Sweetra to the Defendants.[54] Further, Sweetra encouraged Fedder to consider transferring out of the mailroom following her second complaint,[55] and the Defendants threatened to terminate her due to the ongoing issues.[56]

---

position; altering their job responsibilities; or giving them unsatisfactory job evaluations. *See id.* (quoting *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993)).

[48] *Gross v. Hatboro-Horsham Sch. Dist.*, Civ. A. No. 23-0633, 2023 U.S. Dist. LEXIS 11740, at *21 (E.D. Pa. July 31, 2023) (citing *Colwell*, 602 F.3d at 498 *and Stucke v. City of Phila.*, Civ. A. 12-6216, 2015 U.S. Dist. LEXIS 61785 (E.D. Pa. May 12, 2015), *aff'd*, 685 F. App'x 150 (3d Cir. 2017)).

[49] *Id.*

[50] *Id.* (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 233 n.7 (3d Cir. 2006)).

[51] *Thompson-Lyons v. Cmty. Dental of Hamilton, P.C.*, Civ. A. No. 21-20671, 2022 U.S. Dist. LEXIS 144618, at *7-8 (D.N.J. Aug. 12, 2022) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 233 n.7 (3d Cir. 2006)).

[52] *Id.*

[53] *See* Doc. 11 (Second Amended Compl.) ¶¶ 25-32, 41. The Court finds it noteworthy that Fedder perceived the harassment to be escalating to that of a physical and sexual nature following the Defendants' failure to address her first complaint regarding Sweetra.

[54] *Id.* ¶¶ 22-24, 33-37.

[55] *Id.* ¶ 45.

[56] *Id.* ¶¶ 55-56.

Accordingly, the Court concludes that Fedder has adequately pled her constructive discharge.

### c.    Causation

"To demonstrate a link between [a] protected activity and an employer's adverse action, a plaintiff may rely on the temporal proximity between the two if [it is] 'unusually suggestive.'"[57] Here, sufficient temporal connection exists: only after complaining twice to the Defendants did Plaintiff's employment conditions change.[58] This conclusion is reinforced by Fedder's otherwise pristine employment record spanning twenty-six years.[59]

### 3.    Sex Discrimination

Discrimination "can be shown under either of the following two theories: (1) the disparate impact theory; and (2) the disparate treatment theory."[60] Fedder appears to base her claim on the disparate treatment theory. To make out this violation, she must show that she has "'been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion under Title VII.'"[61] "Under this theory, proof of the employer's discriminatory motive is

---

[57]  *Id.*
[58]  *See* Doc. 11 (Second Amended Compl.) ¶¶ 22-25, 33-37, 45, 48-49, 55-56.
[59]  *See* Doc. 15 (Brief in Opposition to Motion to Dismiss) at 12.
[60]  *Dill v. Runyon*, Civ. A. No. 96-3584, 1997 U.S. Dist. LEXIS 4355, at *9-10 (E.D. Pa. Apr. 2, 1997).
[61]  *Id.*

essential."[62] "Discriminatory intent can either be shown by direct evidence or through indirect or circumstantial evidence."[63]

But "[t]o survive a motion to dismiss on a Title VII disparate treatment claim, the plaintiff 'need only set forth sufficient facts to raise a reasonable expectation that discovery will reveal evidence that [the plaintiff] was a member of a protected class and that she suffered an adverse employment action.'"[64] "'[D]etailed pleading is not generally required' but the plausibility standard requires that pleading show 'more than a sheer possibility that a defendant has acted unlawfully.'"[65]

"In the absence of direct evidence of discrimination, a prima facie case of employment discrimination requires a plaintiff to demonstrate by a preponderance of the evidence that: '(1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position that [s]he sought to retain; (3) the plaintiff suffered an adverse employment action [such as] termination of [her] employment; and (4) the adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination.'"[66] "To establish the fourth element, a plaintiff may either: '(1) introduce evidence of comparators (i.e.,

---

[62] *Id.*

[63] *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 347 (3d Cir. 1990).

[64] *McClain v. Connellsville Sch. Dist.*, No. 2:20-CV-01485-CCW, 2021 U.S. Dist. LEXIS 84038, at *11 (W.D. Pa. May 3, 2021) (quoting *Sztroin v. PennWest Indus. Truck, LLC,* Civ. A. No., 17-665, 2017 U.S. Dist. LEXIS 162123, at *11 (W.D. Pa. Oct. 2, 2017)).

[65] *Id.* (quoting *Connelly*, 809 F.3d at 786).

[66] *Drummer v. Hosp. of the Univ. of Pa.*, 455 F. Supp. 3d 160, 168 (Apr. 16, 2020) (quoting *Greene v. V.I. Water & Power Auth.*, 557 F. App'x. 189, 195 (3d Cir. 2014)).

similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances); or (2) rely on circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action.'"[67]

Fedder has certainly established the first three prongs.[68] Further, Plaintiff's "factual allegations, construed in the light most favorable to her, raise a reasonable inference that her gender played a motivating or determinative factor in her" constructive discharge.[69] "As the Third Circuit noted in *Jensen v. Potter*, evidence that a woman was subjected to adverse employment actions following a complaint of sexual harassment will almost always 'give rise to a reasonable inference that the harassment [based on the complaint] would not have occurred if the person making the complaint were a man.'"[70]

Turning to the circumstances of this case, Fedder asserts that she reported Sweetra's behavior twice, but received no useful response from the Defendants.[71] The Defendants' failure to properly respond allowed Sweetra to continue to harass

---

[67] *Drummer*, 455 F. Supp. 3d at 168.

[68] Fedder is female and part of a protected class. She also appears to have been qualified for this position. Constructive discharge qualifies as an adverse employment action for purposes of this analysis. *See e.g.*, *Miller v. Ethan Allen Global, Inc.*, No. 3:10-CV-1701 (JCH), 2011 U.S. Dist. LEXIS 94662 (D. Conn. Aug. 22, 2011).

[69] *Smith v. R.B. Distrib., Inc.*, 498 F. Supp. 3d 645, 655 (E.D. Pa. 2020).

[70] *Id.* (citing *Jensen v. Potter*, 435 F.3d 444, 454 (3d Cir. 2006), *abrogated on other grounds by* 548 U.S. 53 (2006)).

[71] *See* Doc. 11 (Second Amended Compl.) ¶¶ 22-24, 33-37. *See also Smith*, 435 F. Supp. 3d at 655 (plaintiff reported the harassment but her employer provided "little to no response").

Plaintiff.[72] After failing to improve her "communication" with Sweetra, she was threatened with termination despite facing escalating hostility from Sweetra.[73] In addition, Fedder contends that her male coworkers were treated "more favorably" by Sweetra and were not "intentionally ignored" by him.[74] "These claims plausibly suggest that [Fedder] would not have been [constructively discharged] had she been a man."[75]

## III.   CONCLUSION

Fedder has done more than identify inappropriate but ultimately harmless workplace behavior. She has suggested that her employer allowed her supervisor to engage in a sustained pattern of verbal and physical harassment. The Defendants' motion to dismiss pursuant to Rule 12(b)(6) is therefore denied.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[72]   _Id._ ¶¶ 25-27, 40-47.
[73]   _Id._ ¶¶ 49-56. _See also Smith_, 498 F. Supp. 3d at 655 (adverse employment actions taken after reiterating complaints of harassment).
[74]   _Id._ ¶¶ 52, 57-58.
[75]   _Smith_, 498 F. Supp. 3d at 655 (citing _Jensen_, 435 F.3d at 454).